IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAGAI KHALIL ABDELRASOUL<br>a/k/a RizzyThe Kid<br>Defendant. | 1:17-mj-271 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Zachary D. Mikkelson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2015. Prior to my appointment with the ATF, I was a sworn law enforcement officer with the Commonwealth of Virginia for six years. I am currently assigned to the ATF Falls Church Group II Field Office.

2. In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and use of firearms; for the illegal possession and distribution of controlled substances; for committing violent crimes; and for dealing in the business of firearms without a valid license.

3. The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and state law enforcement officers, information obtained from interviews, and analysis of reports.

1

4. Based on my training and experience, I know that it is a violation of Title 18 United States Code 922(g)(3) for anyone who is an unlawful user of or addicted to any controlled substance to possess a firearm.

5. This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

## BACKGROUND

6. In or about February 2017, a cooperating defendant[1] (CD) informed Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agents that he had met an individual who claimed to be able to supply the CD with guns and drugs. The CD met Ragai Khalil Abdelrasoul (ABDELRASOUL), while at work, where he overheard ABDELRASOUL discussing guns and drugs with the CD's coworker. The CD later obtained ABDELRASOUL's contact information and contacted him about purchasing guns from him. Upon receiving the information provided by the CD, ATF agents searched law enforcement databases for ABDELRASOUL and learned that he had been arrested following a routine traffic stop in Fairfax County for possession of a concealed weapon and possession of small quantities of controlled substances, which ABDELRASOUL had admitted were for personal use. ATF investigation revealed that the Glock pistol recovered during the traffic stop had been purchased within two months of its recovery by a known individual, Purchaser 1.

---

[1] The CD was charged with possessing a firearm as a prohibited person in violation of 18 U.S.C. 922(g)(9), possession of a firearm subsequent to a misdemeanor domestic violence conviction. The CD pleaded guilty on May 4, 2017 pursuant to a plea agreement that had been signed on May 1, 2017. The CD will be sentenced on July 21, 2017 and is not currently in custody. If the CD provides substantial assistance to law enforcement in the investigation of others, the CD is eligible for a sentence reduction.
On March 28, 2017, during the pendency of his cooperation with the government, the CD was arrested for possession of marijuana as the result of a search during a routine traffic stop for a minor traffic infraction. The CD did not inform ATF agents or the prosecutor in the case of the new charges and the ATF agents were not aware of the charges until June 12, 2017 when US Probation Office told the agents.

7. Pursuant to the investigation, the CD made contact with ABDELRASOUL via video chat on numerous occasions in March and April of 2017 while ATF monitored the conversations. During these conversations, ATF heard ABDELRASOUL agree to sell the CD firearms purchased through a straw purchaser and discuss obtaining controlled substances, including cocaine and marijuana. ATF also heard ABDELRASOUL agree to sell firearms to the CD while believing, incorrectly, that the CD was a felon. ATF observed ABDELRASOUL instruct the CD on how to prevent law enforcement from identifying the firearms by obliterating the serial number and how to prevent law enforcement from linking the firearm to cartridge casings recovered from a crime scene. ATF also observed ABDELRASOUL show the CD several firearms ABDELRASOUL kept in his apartment. During these conversations, ABDELRASOUL repeatedly mentioned using controlled substances and being "high" on a regular basis. On several occasions, ATF agents observing ABDELRASOUL on the video chat determined, based on their experience, that ABDELRASOUL appeared to be under the influence of drugs during some of the conversation.

8. On the basis of these observations during controlled contacts between the CD and ABDELRASOUL, ATF authorized the CD to make controlled purchases from ABDELRASOUL three occasions, two of which resulted in firearms purchases. On one occasion, on April 5, 2017, ABDELRASOUL sold a Glock, Model 26 to the CD. ATF investigation later revealed that the firearm had been purchased seven days before by a known individual, Purchaser 1. During that sale, ABDELRASOUL told the CD he knew the CD was a felon. ABDELRASOUL also facilitated the CD in purchasing marijuana and attempted to facilitate the CD in purchasing cocaine. ABDELRASOUL took a small amount of marijuana from the CD for his own use after facilitating the CD's purchase of the marijuana from a third

3

person. ABDELRASOUL told the CD later in the day that he was unable to find anyone from whom to purchase cocaine that day.

9. ATF learned that two days after the controlled purchase, on April 7, 2017, Fairfax County police officers had responded to a mental health call at 5505 Seminary Drive, Apartment 905N, Falls Church, VA, 22041. ABDELRASOUL's family expressed concern about ABDELRASOUL because he was hallucinating and exhibited violent behavior towards family member and while under the influence of drugs. Police officers found ABDELRASOUL lying in a bed, unresponsive. ABDELRASOUL was transported to the hospital and his mother, who lives in the same apartment, gave officers consent to search the apartment. While inside the residence, police officers observed various empty gun boxes in plain sight. ATF review of the serial numbers on the empty boxes indicated that one of the boxes had the serial number for the Glock pistol purchased from ABDELRASOUL by the CD. There was also a sticker with a serial that matched the serial number for the Glock pistol recovered during the Fairfax county traffic stop.

10. During a second controlled purchase on April 20, 2017, which was audio and video recorded, ABDELRASOUL sold a shotgun to the CD along with three tetrahydrocannabinol (THC) cartridges,[2] as they had previously arranged during controlled communication. ABDELRASOUL was smoking a THC cartridge at the time of the sale and indicated to the CD that he was high. ATF investigation revealed that the shotgun purchased by the CD had been originally purchased by ABDELRASOUL within the last six months.

---

[2] Cartridges are used to inhale liquid forms of THC through an electronic inhaling device. THC cartridges contain tetrahydrocannabinol, a controlled substance also contained in marijuana. The cartridge is labeled with the manufacturers name and states that it contains approximately 75% THC. THC is a Schedule I controlled substance.

4

## PROBABLE CAUSE

11.     On or about February 17, 2017, a Fairfax County Police Officer conducted a traffic stop of a vehicle for having excessively loud exhaust in violation of traffic regulations. ABDELRASOUL was determined to be the driver and sole occupant of the vehicle. The officer detected a clear odor of marijuana coming from the vehicle and proceeded to search the vehicle. During the search of the vehicle, the officer discovered a concealed pistol (Glock, model 22, .40 S&W pistol, Serial Number: GEF338) under the driver seat of the vehicle and three Xanax pills in the center console. Based on the discovery of the concealed weapon, in violation of Virginia code, and the resultant imminent arrest of ABDELRASOUL, the officer searched the trunk of the vehicle where he located a plastic bag with .5 grams of marijuana. The Officer arrested ABDELRASOUL for violations of Virginia law. After receiving Miranda warnings, ABDELRASOUL admitted to ownership of all drugs that were found, stated that they were for personal use, acknowledged that he did not have a prescription for the Xanax, and told the Officer he had purchased the drugs in Washington, D.C. ABDELRASOUL stated that he resided at 5505 Seminary Drive, Apartment 905N, Falls Church, VA, 22041. ABDELRASOUL made the same statements after being advised of his Miranda rights.

12.     In or about February, 2017, a CD advised ATF agents that he had met a person who told him that he was able to sell the CD drugs and guns, and identified him as "RizzyTheKid." ATF agents researched social media to determine that "RizzyTheKid" was a moniker for Ragai Khalil ABDELRASOUL, a 20-year-old male Virginia resident. The CD confirmed that they were the same person based on photographs of the individual. The CD contacted ABDELRASOUL utilizing FaceTime, which allows the connected parties to communicate audibly, as well as observe a live video feed from the other communicating device.

5

A Special Agent (SA) from the ATF was present during this conversation and confirmed that the subject who the CD was communicating with was ABDELRASOUL based on having previously seen ABDELRASOUL's DMV photograph.

13. During the conversation, ABDELRASOUL informed the CD that he had an intimate knowledge of firearms, especially "Glocks." The CD then informed ABDELRASOUL that he was a "felon."[3] ABDELRASOUL went on to describe numerous different models of Glock firearms to the CD. ABDELRASOUL also disclosed to the CD the details of a traffic stop where ABDELRASOUL had a Glock model 22 with an extended magazine, marijuana, and Xanax pills seized by the police. ABDELRASOUL stated to the CD that he is not old enough to purchase handguns, but he asserted that he had a way to obtain them. ABDELRASOUL later advised that he would use a "Marine" contact in order to obtain the handgun for the CD. ABDELRASOUL advised the CD that if the firearm was recovered by law enforcement after he sold the firearm to the CD, then ABDELRASOUL would just report that it must have been stolen and he had not noticed due to the quantity of firearms that he has in his possession.

14. ABDELRASOUL then asked the CD to inform him immediately if the CD had to kill someone. ABDELRASOUL also advised the CD to pick up the "shell" referring to the spent casings if he fired the gun. ABDELRASOUL advised that he had been in a "situation" and that it had been hard to remember to pick up the "shell." ABDELRASOUL indicated that allowing law enforcement to recover the spent casings would assist law enforcement in their investigation of the related crime. ABDELRASOUL then confirmed that the CD wanted a Glock model 26 and stated that the price after tax would be approximately $607. The CD also requested two

---

[3] The CD was not, at the time, a felon. He was, however, a person prohibited from possessing a firearm under 922(g)(9) as a result of a misdemeanor conviction for domestic violence. The CD was prosecuted in the Eastern District of Virginia for possession of a firearm by prohibited person.

6

other rifles. ABDELRASOUL then told the CD that he would have to call some gun stores to find out how much the rifles would cost and advised that he would call him right back.

15. ABDELRASOUL then called back using FaceTime approximately four minutes later and informed the CD that he could get him an "AR," referring to a type of rifle, for approximately $1000. The CD requested that ABDELRASOUL obtain the AR as well and ABDELRASOUL advised the CD that the total cost for the Glock model 26 and the AR would be $1664 after tax. ABDELRASOUL then ended the call. He then called the CD back approximately five minutes later and advised that he found another shop that had a "P90," a different kind of rifle, for $1594 and advised the CD that it would cost $1641.94 after tax. The CD advised that he was not interested in spending that much and ABDELRASOUL confirmed that the price for the AR-type rifle and the Glock model 26 would be $1664.14.

16. On March 31, 2017, the CD again contacted ABDELRASOUL utilizing FaceTime and an ATF Special Agent was able to confirm that ABDELRASOUL was the one communicating with the CD based on visual comparison of the image on the phone and a DMV photograph of ABDELRASOUL. During the conversation, ABDELRASOUL advised that he had obtained the Glock model 26, that the CD had requested. ABDELRASOUL proceeded to open a black gun box and show the CD a black semi-automatic pistol that was consistent with a Glock model 26. ABDELRASOUL indicated that he had installed a trigger lock on the pistol and that he would not provide the key for it until he received payment for the pistol. ABDELRASOUL then went to a closet and opened a box containing numerous magazines. ABDELRASOUL inserted what appeared be a 30-round magazine into the pistol and displayed it to the CD using FaceTime.

17. ABDELRASOUL then walked to a closet where several long gun boxes could be seen. ABDELRASOUL indicated that one was a rifle, one was a Benelli shotgun, and one was his "little pump" (indicating a pump-action shotgun). ABDELRASOUL then offered to sell the 30 round magazine to the CD with the Glock model 26 pistol they had been discussing. ABDELRASOUL eventually agreed to sell the pistol and 30 round magazine to the CD for $560.[4] Your affiant noted that this price was low for the cost of the gun and observed that ABDELRASOUL appeared to be under the influence of drugs during the conversation and negotiation over price.

18. ABDELRASOUL then informed the CD that he was a "Marine" in the reserves and stated that he gets drug tested once a month. The CD asked if ABDELRASOUL smokes and ABDELRASOUL stated "I smoke like shit, but I just know when to stop," alluding to the drug testing. ABDELRASOUL and the CD then arranged a time for the CD to purchase the firearm.

19. On April 4, 2017, the CD again contacted ABDELRASOUL utilizing FaceTime and agreed to meet the next day to conduct the transaction for the firearm. They negotiated on a price again and agreed to a total of $650 for the Glock pistol and the 30 round magazine. The CD indicated that he would like to purchase cocaine and marijuana from ABDELRASOUL when he purchased the firearm. ABDELRASOUL indicated that they could discuss that when the CD and ABDELRASOUL met. ABDELRASOUL indicated that he would send the address for the meeting to the CD and the FaceTime call was concluded. Approximately three hours later, the CD received a text from ABDELRASOUL stating "5503 seminary rd." (5503 Seminary Road is a lobby building and rental office shared by 5505 and 5501 Seminary Road,

---

[4] This price was not the price the CD ultimately paid for the gun when the controlled purchase was complete.

8

Falls Church, VA. 5505 Seminary Road is the address provided by ABDELRASOUL to the Fairfax County police and is ABDELRASOUL's address on record at the DMV)

20. On April 5, 2017, the CD contacted ABDELRASOUL utilizing FaceTime and ABDELRASOUL indicated that he was ready to meet the CD. The CD then drove to 5503 Seminary Road, located in the Eastern District of Virginia, and again contacted ABDELRASOUL to let him know that he had arrived. ABDELRASOUL met the CD outside of the building and they both got into the CD's vehicle. ABDELRASOUL sold a black semi-automatic pistol to the CD along with a 30 round magazine for $650. The Glock pistol had a trigger lock, which ABDELRASOUL removed at the time of the sale.

21. During the transaction, ABDELRASOUL stated that he knew that the CD had a felony conviction. ABDELRASOUL then stated to the CD that he was nervous because he had just been arrested on a gun related charge, describing that he had gone to D.C. with a friend to purchase marijuana and brought a firearm with him in case something went wrong. ABDELRASOUL then stated that he had been stopped by police after returning to Virginia and they had found marijuana, Xanax, and a concealed weapon in his vehicle. ATF later identified the Glock pistol ABDELRASOUL sold to the CD as a Glock model 26, 9mm X 19, Serial Number BDEB081.

22. ABDELRASOUL told the CD that he had lots of other firearms. In discussing the other firearms, ABDELRASOUL indicated he had no recollection of showing the CD the firearms he had in his apartment during the March 31, 2017 FaceTime call. The CD asked about purchasing other firearms and ABDELRASOUL stated that he was not selling some of them but

9

indicated that he had a shotgun that he would sell to the CD. ABDELRASOUL then showed the CD a video of ABDELRASOUL firing the shotgun.

23. ABDELRASOUL also told the CD that he had recently seen an individual who had ripped him off and that ABDELRASOUL had gotten angry and retrieved his "30 clip," apparently describing loading his firearm. ABDELRASOUL indicated that the incident had been reported in the news mentioning that shots had been fired in Skyline. (Skyline Condominiums is the name of the apartments where ABDELRASOUL resides.) ABDELRASOUL was likely referring to a widely-reported incident on January 12, 2017 in which bullets were recovered from a daycare across the street from Skyline apartment building. Children were inside sleeping at the time that the bullets entered the daycare.

24. The CD then asked ABDELRASOUL if he could purchase marijuana and cocaine from ABDELRASOUL while he was with him. ABDELRASOUL stated he could make some calls and proceeded to call numerous individuals. ABDELRASOUL directed the CD to the area of Paul Street and Scoville Street. There, the CD was provided with approximately 13 grams of marijuana from an unidentified man. ABDELRASOUL looked at the marijuana and told the unidentified man to accept $120 for the bag and the unidentified individual agreed. The CD then provided approximately $120 to the unidentified individual. ABDELRASOUL and the CD then returned to 5503 Seminary Road and ABDELRASOUL stated that he would let the CD know when he had the cocaine and advised that the CD could purchase the shotgun then as well. ABDELRASOUL then asked if he could take a small amount of the marijuana out of the bag that the CD had just purchased. The CD allowed it and ABDELRASOUL proceeded to remove a small amount of marijuana from the bag and take it with him.

25. The CD met with ABDELRASOUL later that day, but ABDELRASOUL stated that he had not been able to obtain the cocaine. ABDELRASOUL stated that he uses cocaine occasionally, but not regularly. ABDELRASOUL made numerous outing calls attempting to arrange the purchase of "oil" and told the CD that he was trying to pick up a "treat" for himself. Based on your affiant's training and experience, I know that "oil" is a slang term for liquid derivatives of marijuana and that "treat" is common slang term for illegal drugs. ABDELRASOUL was ultimately not able to obtain cocaine for the CD.

26. On April 7, 2017, Fairfax County Police Officers responded to 5505 Seminary Road, Apartment 905N, Falls Church, VA for what was reported as a mental-health incident for a male hallucinating and becoming violent towards family members. Officers found ABDELRASOUL laying on a bed in the apartment and would not respond to officers. Family members informed the officers that ABDELRASOUL previously used ADHD medication and Xanax but advised that he had not used recently. Emergency Medical Service personnel advised that ABDELRASOUL was stable but had fixed, dilated pupils, indicating possible use of controlled substances. ABDELRASOUL's mother, who lives the apartment, gave officers permission to search the apartment. Officers noticed several gun boxes throughout the apartment, but did not see any firearms in the boxes. The officers noted the serial numbers on the boxes and provided the information to ATF agents.

27. ATF review of the serial numbers on the empty boxes indicated that one of the boxes had the serial number for the Glock pistol purchased from ABDELRASOUL by the CD. There was also a sticker with a serial that matched the serial number for the Glock pistol recovered during the Fairfax County traffic stop. Both Glock pistols had been purchased by a

known individual, Purchaser 1. Review of the other serial numbers from the empty boxes revealed other identified but unknown individuals as the purchasers.

28. On April 17, 2017 the CD attempted to purchase a shotgun and cocaine from ABDELRASOUL. ABDELRASOUL told the CD that he was unavailable because he was still attempting to obtain the cocaine. No transaction took place on this date.

29. On April 20, 2017 the CD arranged to meet with ABDELRASOUL to purchase a shotgun and four THC cartridges. Before they met, however, ABDELRASOUL asked the CD to purchase only three of the four cartridges because ABDELRASOUL indicated that he wanted to keep the fourth one for his own use. They discussed this transaction over FaceTime and text messages.

30. The CD met ABDELRASOUL in the area of 7291 Arlington Blvd, Falls Church, VA, which had been prearranged by ABDELRASOUL and the CD. When they met, ABDELRASOUL was inhaling the THC cartridges using an electronic smoking device. The CD told ABDELRASOUL that he looked "high" and ABDELRASOUL stated "I am so high off this shit, bro." ABDELRASOUL and the CD then negotiated price for three of the THC cartridges and the shotgun and eventually agreed to $550 total. ABDELRASOUL then provided the shotgun and THC cartridges to the CD in exchange for the $550. ATF investigation revealed that the shotgun purchased from ABDELRASOUL by the CD during this controlled purchase was a Mossberg Maverick model 88, 12-gauge shotgun, Serial Number MV0005372, and that it had been purchased on January 2, 2017 by ABDELRASOUL.

## CONCLUSION

31. Based on this information, I submit that there is probable cause to believe that ABDELRASOUL is an unlawful user of a controlled substance in violation of 18 U.S.C. 922(g)(3). I submit that this affidavit supports probable cause that to issue an arrest warrant for ABDELRASOUL for violation of 18 U.S.C. 922(g)(3).

Respectfully submitted,

_____
Zachary D. Mikkelson
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on:

6/15/17

_____/s/_____
Michael S. Nachmanoff
THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 1:17-MJ-271 |
| v. ) | |
| ) | **UNDER SEAL** |
| RAGAI ABDELRASOUL ) | |
| a/k/a Rizzy The Kid ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S MOTION TO SEAL COMPLAINT AND AFFIDAVIT PURSUANT TO LOCAL RULE 49(B)

The United States, by and through undersigned counsel, pursuant to Local Rule 49(B) of the Local Criminal Rules for the United States District Court for the Eastern District of Virginia, asks for an Order to Seal the complaint and affidavit in support of the complaint, until the defendant is arrested.

**I.   REASONS FOR SEALING** (Local Rule 49(B)(1))

1. The Bureau of Alcohol, Tobacco and Firearms ("ATF") is investigating the possession of a firearm by an unlawful user of controlled substances, Ragai Abdelrasoul, in violation of Title 18, United States Code, Section 922(g)(3). ATF is also investigating other violations of Title 18 United States Code, Sections 922 and 924 by Abdelrasoul and possible co-conspirators.

2. Premature disclosure of the charges against the defendant would jeopardize an ongoing criminal investigation threatening our ability to locate and arrest the defendant and may lead to the destruction of evidence. Disclosure of the complaint and affidavit in support of the complaint would provide the defendant and others with a roadmap of the ongoing criminal

investigation, including the identity of agents, of a cooperating defendant, and other possible witnesses. It will also increase the risk to the agents involved in arresting the defendant and searching his residence.

II. **REFERENCES TO GOVERNING CASE LAW** (Local Rule 49(B)(2))

3. The Court has the inherent power to seal complaints and affidavit in support of complaints. See United States v. Wuagneux, 683 F.2d 1343, 1351 (11th Cir. 1982); State of Arizona v. Maypenny, 672 F.2d 761, 765 (9th Cir. 1982); Times Mirror Company v. United States, 873 F.2d 1210 (9th Cir. 1989); see also Shea v. Gabriel, 520 F.2d 879 (1st Cir. 1975); United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980); In re Braughton, 520 F.2d 765, 766 (9th Cir. 1975). "The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984). Sealing the complaint and affidavit in support of the complaint is appropriate where there is a substantial probability that the release of the sealed documents would compromise the government's on-going investigation severely. See e.g. In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 574 (8th Cir. 1988); Matter of Eye Care Physicians of America, 100 F.3d 514, 518 (7th Cir. 1996); Matter of Flower Aviation of Kansas, Inc., 789 F.Supp. 366 (D. Kan. 1992).

III. **PERIOD OF TIME GOVERNMENT SEEKS TO HAVE MATTER REMAIN UNDER SEAL** (Local Rule 49(B)(3))

4. The complaint and affidavit in support of the complaint would need to remain sealed until the defendant is arrested

5. Upon occurrence of the defendant's arrest, pursuant to Local Rule 49(B)(3), the sealed materials will be automatically unsealed and handled as such.

6. The United States has considered alternatives less drastic than sealing and has

found none that would suffice to protect this investigation. The United States will move to unseal the documents before they are set to become automatically unsealed if it determines that circumstances warrant such action.

WHEREFORE, the United States respectfully requests that the complaint and affidavit in support of the complaint and this Motion to Seal and proposed Order be sealed until the defendant is arrested.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By: _____
Lilian M. Timmermann
Special Assistant United States Attorney